conclude that respondents did apply the enrollment standard to the final audit.

Nor can we accept respondents' argument that the "former" standard that they applied prior to the September 1989 directive was the multi-factor approach as opposed to the average daily attendance standard. The self-serving averments of respondents in support of this claim are clearly contradicted by prior interdepartmental correspondences. The latter make no mention of the multi-factor approach, and consistently refer only to the use of an average daily attendance methodology in determining compliance with established student/teacher ratios. Further, the September 1989 directive makes no reference to the multi-factor approach but instead explicitly addresses the inapplicability of the average daily attendance standard. Thus, upon remittal, petitioner is entitled to have the average daily attendance standard applied to its final audit.

As a final matter, with respect to the determination regarding the qualifications of certain of petitioner's teachers, the record indicates, and respondents do not dispute this, that two of them, Ada Vega and Aurora Realubit, were in fact licensable.[3] They were, therefore, improperly included as disallowances on the final audit. With respect to the remaining teachers at issue, however, it cannot be said that the disallowances for lack of qualifications for these teachers was arbitrary and capricious (see, Matter of Royal Bus. School v New York State Dept. of Educ., 141 AD2d 170) and the conclusions as to those teachers should thus not be disturbed.

White, Casey, Peters and Spain, JJ., concur. Ordered that the judgment is modified, on the law, with costs to petitioner, by reversing so much thereof as dismissed the petition regarding disallowances for the 1988-1989 academic year based on student/teacher ratios and disallowances premised on the qualifications of Ada Vega and Aurora Realubit; final audit report and conditional demand letter annulled regarding said disallowances, petition granted to that extent and matter remitted to respondents for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

■ In the Matter of FRANCES E. DALMOLEN, Appellant, v

3. Supreme Court also accepted this argument but determined that because the TAP awards for the students taught by these teachers had already been disallowed for violation of the student/teacher ratio requirement, this issue did not impact upon the ultimate conclusion of the final audit report. In view of our conclusions with respect to the issue of student/teacher ratios, however, it is necessary to address this issue.

ELMIRA COLLEGE et al., Respondents. [627 NYS2d 577] —Appeal from a judgment of the Supreme Court (Ellison, J.), entered May 20, 1994 in Chemung County, which, in a proceeding pursuant to CPLR article 78, dismissed the petition for failure to exhaust administrative remedies.

Judgment affirmed, upon the opinion of Justice William N. Ellison.

Mikoll, J. P., Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed, with costs.

■ CAROL WW., Individually and as Parent and Natural Guardian of MICHAEL WW. and Another, Infants, Appellant, v GEORGE STALA, Defendant, and CHRISTINE FECKO, as President of the Student Association of the State University of New York at Binghamton, et al., Respondents. [627 NYS2d 136] —Mercure, J. Appeal from an order of the Supreme Court (Coutant, J.), entered January 12, 1994 in Broome County, which granted motions by defendants Christine Fecko and Zubeir Jaffer for summary judgment dismissing the complaint against them.

Plaintiff commenced this action to recover for damages arising out of defendant George Stala's alleged sexual contact with her two sons. She appeals Supreme Court's order dismissing the complaint against defendants Christine Fecko and Zubeir Jaffer (hereinafter collectively referred to as defendants), and we affirm. Plaintiff's claim of liability against defendants is based upon their service, respectively, as president of the Student Association and of the Student Volunteer Service (hereinafter SVS) of the State University of New York at Binghamton. The Student Association, whose members include all registered undergraduate students at the university, is responsible, among other things, for the chartering and funding of student organizations. In 1974, it chartered the SVS as a student organization to serve as a liaison between university students and agencies and individuals desiring volunteer assistance. The SVS in turn sponsored the Connection (also referred to as "Big Buddy") Program, similar in function to the well-known Big Brothers and Big Sisters organization, which matched student volunteers with area children.

Stala participated in the Connection Program and was matched with two boys prior to his withdrawal from the university in May 1987. One of Stala's "matches" lived in the same apartment complex as plaintiff's children. In August